309-0675 Laverne Camp and Carol Camp felons by James Ginski v. International Union et al. at police by Stanley Einstein. Counsel, you may proceed. Thank you, Your Honor. May it please the court and counsel, my name is Jim Ginski. It's my pleasure to represent the plaintiffs in this case, Carol and Laverne Camp. Carol and Laverne are a retired couple from Peoria County. Laverne worked his working career as an electrician at Caterpillar in Peoria County. Throughout his tenure with Caterpillar, Laverne was a member of the UAW. The UAW is the bargaining agent for the employees of Caterpillar with respect to benefits, both pension and health care benefits. After Laverne's retirement, the UAW in negotiations with Caterpillar cut back, for lack of a better phrase or term, on the benefits that its retirees were entitled to. Whereas in the past, for the period of time that Laverne had been working for the company, Caterpillar, and for his early years of retirement, he had complete health benefits and a retirement pension to which he did not contribute. That was changed by a bargaining between the company Caterpillar and UAW subsequent to Mr. Camp's retirement. Despite the fact that the retirees no longer work at the company, they retain their voting rights and they retain their activities and they maintain their activities with respect to the unions. And Laverne Camp, in that capacity, was somewhat vocal in his opposition to the union leadership that had agreed to the cut back in the benefits for retirees like himself. There was an election that was upcoming at local 974 in Peoria. And the day before the election, Mr. Camp had sent a letter to the Peoria Journal-Star. It happened to be published the day before the election in which Mr. Camp was critical of the union leadership, was advocating for change with respect to that union leadership so that the retirees could potentially recoup some of the benefits that they lost. Dave Chapman, at the time in question, was the president of the local. Dave Chapman either read or somehow got word of the letter to the editor that was published in the Peoria Journal-Star and he called the camps. The camps were not there. They had the recorder. Mr. Chapman left a message on their recorder threatening Laverne Camp. Later that same day, Mr. Chapman, the president of the local, called back and left another threatening phone message in which he also threatened Mrs. Camp, Carol Camp. The camps, as they should have, contacted the Peoria County Sheriff's Office. The Peoria County Sheriff's Office investigated. The tapes were turned over to the investigating deputy sheriff. Mr. Chapman was confronted by the sheriff's deputy, arrested, and later convicted with respect to those harassing, threatening telephone calls. Also, on the date of the election, a friend of Laverne Camp's was confronted by a member of the international union, not the local, but the international union, who made threats against this individual's buddy. This individual took that, or buddies, two buddies, took that to mean Laverne Camp and Jim O'Connor, the two most vocal advocates of this slate for change membership, members for change slate to the delegation. Those threats were also conveyed to the camps. The camps subsequently felt unsafe in their own home. They were intimidated. They contacted me, and here we are. The trial court in Peoria County dismissed the second amendment complaint on a 2-6-15 motion to dismiss, meaning that the plaintiffs had not stated the cause of action. Because it is a 2-6-15 motion to dismiss, the standard of review here in this court is to no vote. That is to say, you look at, this court looks at the allegations of the complaint with fresh eyes for the first time. This court determines without paying any deference to the ruling of the trial court. This court examines for the first time the allegations in the complaint. It's the plaintiff's position that they have clearly stated the cause of action. After all, the issue before this court is not whether or not there's proof as to what Mr. Chapman did or didn't do or what Mr. Bainbridge on behalf of the international did or didn't do. That's not for this court to decide. Neither is it for this court to decide what the extent, the nature and extent of the damages were. Those are issues to be resolved after presentation of evidence to the trier of fact. The trier of fact is the jury. It's not the judge. It's not the presiding trial court judge. And it's the plaintiff's position that what has been set forth in the complaint clearly states the cause of action cannot be dismissed at the pleading stage. It is not a situation where there are no facts that can be proven that would support a cause of action as alleged. The trial court was incorrect and its ruling should be reversed. Thank you. Thank you, counsel. You may proceed, counsel. Thank you. I please the court, Stanley Isaac Stein, for the two defendants. I hope to be brief as counsel for the appellant was. The tort of intentional infliction of emotional distress is generally disfavored and has seen no expansion of it since it was first iterated and recognized by the Supreme Court back in 61 in Nairobi, Israel. What we have here is really an intent by the plaintiffs to have this court expand the tort of intentional infliction of emotional distress to become a quasi-establishment of a quasi-judicial code of political correctness. And let me use that as a launching point for one of my brief comments. It's very important to recognize that there are two independent separate defendants here. Plaintiffs try to conflate the two as if union is a union all the time, one union. The law is quite clear, as we cited in our brief, that an international union is a separate legal entity whose existence is separate and independent of a local union. Thus, there is only one allegation that amounts to anything against the international union and that is an alleged threat made by UAW international representative John Bainbridge to a friend. That threat wasn't even made to the plaintiffs. And I'm going to suggest that if that becomes the basis for expanding intentional infliction of emotional distress, every barroom chatter between two adversaries in which one of the adversaries is talking about the body of his other adversary, that will expand exponentially judicial involvement in creating a code of political correctness. There is not a single case that we have found, nor appellants have cited, that permitted a cause of action for intentional infliction of emotional distress to be based on, one, a single ambiguous statement, two, that was not even made to the plaintiffs, but three, was reported to the plaintiffs by somebody who, in their words, this third party to whom this alleged threat was made, he interpreted the statements not as political hubris, but against two people. The allegations of the complaint I needn't wax eloquent on. You can look at it. It's a single allegation. And if that's a tort of intentional infliction of emotional distress, defense counsel in the state are going to get a lot more business, I'm going to suggest. It's important, therefore, that the separate legal existence of the international and the local not be conflated. This is an unusual case. I will agree with counsel that this case came up in the posture of a 2-6-15 motion to dismiss, but they cited extensively to the deposition of Laverne Camp in their statement of facts. We, for purity of position, filed a motion back in December, moving to strike their brief and moving to strike the deposition. I don't know. I will leave it for plaintiff to explain how that deposition got in the file, but suffice it to state there never was a Rule 201M motion that authorized the filing of the discovery, especially when we were early at the pleading stage. Nonetheless, the deposition, respectfully, this court decided remains in the record, and they cited to it. The reason I mention that is not only did the trial court believe that the pleadings were utterly sparse and did not rise to stating a cause of action against either of the clients based on this tort, but the real rhetorical question is why are we here? The deposition of Laverne Camp makes it abundantly clear that they received an apology within 24 hours, and really 12 hours, on the same answering machine on which they sued. Chapman sincerely apologized. Listening to it, there's no one could form a conclusion other than that he truly was sorry. He assured them no harm would befall them. He apologized, and plaintiff Laverne Camp admits it was an apology, only he didn't want to accept it. Why are we here? It was not a, what did Laverne Camp want? In his deposition, Laverne Camp said he wanted a personal apology. All right. Arguably, that might have been politically more correct for Chapman to do. Only Camp never told that to the union. Remember, Chapman's not on trial here. The UAW-974 is, and UAW-974 never knew that Chapman had rejected the apology. In this case, the only, the first time UAW-974 learned that the apology was not accepted was when they got hit with the summons. I suggest that the judicial system could be made better use of than these kind of cases. That apology was made in the same way that the alleged cause of action is based, and using an objective, reasonable man standard, based on the record of this case, this court should not permit this cause of action to continue any further based on the record that plaintiff introduced. A couple quick comments. Just given the fact that we were in the trial court at the 2-6-15 motion, we never did get to litigate the issue, or it never was appropriate at the time, whether either Bainbridge or Chapman, at the time of their statements, were acting in their official capacity or in their private capacity as election opponents, political candidates. And I needn't say more. That part of the record has not been developed. In conclusion, the real question is, why are we here? There was an apology made. It's in the record before this court. You can't disparage the apology on the Sunday apology that Chapman made, that Laverne Camp admits was made, only he refused to accept it, at the same time that his plaintiffs are asking that credence be given only to the initial threat, alleged threat. This case was properly dismissed. And incidentally, one last thing. The reason why the pleadings are so deficient on the extent of emotional harm and alleged emotional distress, other than they live in fear of safety as a result of the threat, is proven by the fact that they couldn't possibly plead any sort of emotional distress because an apology was made within 12 to 24 hours. That's why the complaint is deficient and the trial court judge had it right. Thank you. Counsel, you may proceed. If the court wants me to answer questions about the evidence deposition of Laverne Camp being in the record on appeal, I'll be happy to answer those questions. This was a 615 motion, not a summary judgment motion. It was not a summary judgment motion. That's right, a 615 motion. Exactly. And it's the complaint within our state's cause of action. I agree. But again, there's some suggestion that there's something going on under the table being advanced by the plaintiff here, and that's simply not true. That evidence deposition was noticed twice. Mr. Siegel, who's here present today, was present for the rescheduled deposition. He took the deposition in the manner of a discovery deposition. The transcript was filed with the court and actually cited by defense in one of their prior motions. So to suggest that there's something underhanded going on here is absolutely beyond appeal. With reference to the fact that there are two entities, plaintiffs have never disputed that. Plaintiffs fully recognize that the local 974 is a different entity incorporated separately from the international union. And even if this court were to decide that the allegations in the complaint don't state a cause of action against the international union, that's not to say that plaintiffs have not stated a cause of action against the local, whose president made these threats. This issue with respect to the apology, that Mr. Chapman apologized. He didn't do that in person. He did that only after he was arrested. And counsel basically states, nobody doubts the sincerity of that apology. Well, with all due respect, the sincerity of that apology is for the decider of fact, the jury, not for Mr. Eisenstein to decide. That's what our system of justice is about. That's why we impanel juries. Lastly, Mr. Eisenstein argues that there is not a single case in the state of Illinois that supports the plaintiff's position here. That's absolutely untrue. The brief that has been submitted by the plaintiffs clearly sets forth cases that support our position. Mr. Eisenstein says there is not a single case whereupon an intentional inflection of emotional distress case has been maintained upon a single threat. This isn't a single threat. There were two different voice messages left. There was a threat in the parking lot the day of the elections, and then there was a threat in writing by mail subsequent to that. There were four, not one, four threats. Mr. Eisenstein states that this would be a clear expansion of this law in the state of Illinois. And there has been no expansion since the Niren v. Izzo case from the Illinois Supreme Court in 1961. That's not correct. Last year, 2009, the Illinois Supreme Court decided the case of Thornton v. Garcini and specifically held that in these cases, it is not necessary to have medical evidence or expert testimony in support of the emotional distress claim. That's what the Illinois Supreme Court said last year. This case should be reversed. Thank you. Thank you, counsel. The court will take this case under advisement and will rule with dispatch post haste, and we will now adjourn to the next panel.